**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

LYDIA DEJESUS,

        Plaintiff,

   v.

KIDS ACADEMY, INC.,
doing business as
KIDACADEMY LEARNING CENTER,
and GOLDBIL INVESTMENT CORP.,
doing business as
KIDACADEMY LEARNING CENTER,

        Defendants.

1:18-cv-13822-NLH-AMD

**OPINION**

---

**APPEARANCES:**

JULIA W. CLARK
ARI R. KARPF
KARPF KARPF & CERUTTI PC
3331 STREET ROAD
TWO GREENWOOD SQUARE
SUITE 128
BENSALEM, PA 19020

    *On behalf of Plaintiff*

**HILLMAN**, District Judge

Plaintiff, Lydia DeJesus, filed her complaint on September 12, 2018 against Defendants, Kids Academy, Inc. and Goldbil Investment Corp., for their alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Count One), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. (Count Two), the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq., and New Jersey

Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq.
Defendants were served with Plaintiff's complaint and failed to
respond.  On December 3, 2018, Plaintiff requested that the
Clerk enter default against Defendants.  The Clerk entered
default on December 4, 2018.  Presently before the Court is
Plaintiff's motion for default judgment.[1]

**BACKGROUND**

Plaintiff alleges the following:[2]  Plaintiff is a 71-year-
old female.  Plaintiff was hired by Defendants as a full-time
employee in 2003, and terminated on July 8, 2018.  Defendants
offer day care, pre-kindergarten and kindergarten, as well as
summer camps, through 6 locations in New Jersey: Williamstown,

---

[1] Plaintiff previously moved for default judgment, which the
Court denied without prejudice because Plaintiff did not include
a brief or affidavit of Plaintiff explaining why she is entitled
to default judgment, on what claims she is entitled to default
judgment, the elements of those claims and how she has shown
each of those elements, the appropriate measure of damages under
those claims, and what damages she is entitled to.  (Docket No.
6.)  The Court granted Plaintiff leave to refile her motion to
address these deficiencies, and Plaintiff has appropriately done
so.

[2] The Court summarizes the relevant facts to support Plaintiff's
motion for default judgment from her complaint and the affidavit
filed in support of her motion.  See Lurty v. 2001 Towing &
Recovery, Inc., 2019 WL 3297473, at *6 (D.N.J. 2019) (explaining
that in order to prove a plaintiff's entitlement to default
judgment, including damages, the plaintiff, and not simply
counsel, must submit to the Court an affidavit to support her
claims.  As explained below, on a motion for default judgment,
every "well-pled allegation" of the complaint, except those
relating to damages, are deemed admitted.  Comdyne I. Inc. v.
Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Washington Township, Westampton, Mount Laurel, Cherry Hill, and Absecon.  Plaintiff was employed with Defendants at their Westampton, New Jersey location.  Plaintiff worked as both a cook and as a teacher's assistant as requested and scheduled.

A few years prior to Plaintiff's termination, Plaintiff required a medical leave of absence for back surgery.  Upon returning from back surgery and medical leave, Plaintiff was converted from a full-time employee to a part-time employee. Plaintiff was given no performance-based rationale for her reduction in hours and conversion from a full-time employee to a part-time employee, and the transition was solely based upon Plaintiff's need for a medical leave of absence.  Other younger and less experienced (and non-disabled) employees absorbed her hours.  As a part-time employee in her last few years of employment, Plaintiff typically worked 23-26 hours per week. She also continued to work as a versatile employee performing work in Defendants' kitchen as a cook and in classrooms as an assistant teacher as well.

Plaintiff has a long history of health conditions, but none of these conditions prevented Plaintiff from performing as a cook or assistant teacher.  At all times, Plaintiff was able to perform the essential functions of her job with Defendants.  Her health conditions have included:

- Arthritis primarily impacting her knees and back;

- Spinal Stenosis;

- Ankle complications (requiring surgery, screws and a plate);

- Cataracts surgery; and

- Other miscellaneous health needs or complications from the above- referenced health issues.

As a near 15-year employee, Plaintiff had always performed her jobs extremely well without the need for any progressive discipline or negative evaluations.  Plaintiff was well liked by parents and family of children who attended Defendants' locations and was overall a very qualified and good employee.

During the last several years of her employment, Plaintiff was normally supervised by two separate director-level employees.  At the time of Plaintiff's termination, Paula Pezzolla[3] and Danielle Simmons were co-directors of Defendants' Westampton location with Pezzolla having been employed several years in that capacity and Simmons only having worked in that capacity for a short time.  Pezzolla and Simmons made all decisions regarding hiring, firing and staffing within the location where Plaintiff worked.  Simmons was approximately 24-years-old at the time Plaintiff was terminated.

---

[3] The affidavit of service lists the co-director's name as "Paula Pezzolle."  (Docket No. 4 at 27.)  Plaintiff's brief and certification refers to her as "Paula Pezzolla" and "Paula Perzolla."  The Court will refer to her as "Paula Pezzolla."

Plaintiff had asked for additional work or hours and welcomed a full-time schedule.  She was ignored and hours were given to younger employees and individuals who had been much more recently hired.  Plaintiff frequently observed that the newly hired employees, many of whom were teenagers with no prior daycare experience, were given more hours than Plaintiff within the last year of her employment.

Plaintiff had turned 70 years old in her last year of employment and at times walked with a noticeable limp (or awkward gait).  She also required miscellaneous time off for appointments or medical reasons, including knee and back injections to treat her arthritis, but nothing significant or frequent.  Defendants' management gave Plaintiff a very hard time about her need for medical appointments and complained that Plaintiff should find a way to schedule these appointments outside of working hours.  Plaintiff could have easily continued to work for Defendants in any capacity as a part-time or full-time employee as she was able to perform all essential functions of the job.  However, during Plaintiff's last 1-2 months, Defendants' management attempted to force Plaintiff to quit. Among other things, including being extremely hostile and openly mean to Plaintiff, they intentionally mad Plaintiff's schedule tremendously difficult.

By way of example, Defendants' management repeatedly told Plaintiff to punch out for several-hour breaks and scheduled her for long breaks, often up to 3 hours, between separate smaller shifts, even though there was work that Plaintiff could and would have performed during those gaps.  Additionally, during that same timeframe, Defendants' management attempted to make Plaintiff's job more difficult by intentionally scheduling her in rooms within the facility with children who were known to be problematic or harder to deal with.

Plaintiff continued to do an excellent job, no matter the job assignment given to her.  However it was clear that Defendants' management was intentionally trying to make her job substantially harder.  Just as Plaintiff continued to work because she loved her job despite the discriminatory and retaliatory conversion to a part-time employee, she tolerated Defendants' management's manipulation of her schedule.  She did so because she was passionate about her job and the children around her.  Plaintiff continued to do an excellent job, no matter the job assignment given to her.

On July 6, 2018, the last day that Plaintiff worked for Defendants, Plaintiff was confronted by Simmons and Pezzolla and brought into a meeting.  In this conversation multiple discriminatory comments based on Plaintiff's age and health were made by Simmons and Pezzolla, including:

1. "You need to retire;"

2. "It is your time to retire;"

3. "You have a lot of health issues;"

4. "You appear to have continuing knee and back problems anyway;"

5. "Use your retirement to go to the beach;"

6. "This job is too hard for you with your legs;" and

7. Simmons said, "I'm 24, and I can't even keep up with the kids," implying that Plaintiff was unable to do her job due to her age.

Simmons and Pezzolla made it clear during this meeting that Plaintiff could no longer work for Defendants based on Plaintiff's age and health.  Plaintiff responded that she had no interest in leaving her job, that she loved her position and that she would not agree to retire.  Simmons and Pezzolla insisted that Plaintiff could not work with the children, although they provided no reason why, since Plaintiff had been able to perform all job functions through that date. Additionally, when Plaintiff asked if she could at least continue to cook, as she had been doing two days per week, Simmons and Pezzolla offered no explanation as to why Plaintiff could not continue to at least work in that position.

Simmons and Pezzolla then informed Plaintiff that she should think about it over the weekend and get back to them. Simmons and Pezzolla also tried to entice Plaintiff into

quitting by assuring Plaintiff that they would not challenge Plaintiff's unemployment compensation if she would agree to leave voluntarily.  Plaintiff responded that her decision was already made that she was not retiring.

That Sunday, July 8, 2018, Plaintiff received a text message from Simmons stating: "You will not need to show up for work tomorrow we have terminated your employment for medical reasons. You need to file for full unemployment, there will be no more discussion."

Following Plaintiff's termination from Defendants, Plaintiff was contacted by multiple co-workers to ask Plaintiff about her health as Defendants' management apparently informed staff members that Plaintiff was no longer employed with Defendants due to her health conditions.  Plaintiff was not terminated for any performance concern, and she had not been given any warning of any such concern in over a decade of employment with Defendants.  No management of Defendants are physicians, nor qualified to determine if Plaintiff was allegedly not medically fit to continue in her employment.  No physician of Plaintiff ever concluded Plaintiff was in any manner unable to work, and Plaintiff worked with the same medical conditions for many years.  Defendants also never had Plaintiff undergo any fitness for duty evaluations, requested medical documents or any other information – and instead –

substituted their own discriminatory perceptions of Plaintiff based upon her advanced age and known health diagnoses.

Plaintiff was subjected to the following adverse actions: (a) improperly converted to part-time from full-time for taking medical leave years before her termination; (b) denied more hours after inquiring about additional hours in the years leading up to her termination and was subjected to lesser hours in many weeks given to younger or non-disabled individuals; (c) given an intentionally difficult and manipulated schedule in her last months of employment; and (d) terminated from her employment for discriminatory and retaliatory reasons.

**DISCUSSION**

**A.   Subject Matter Jurisdiction**

This Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey state law claim pursuant to 28 U.S.C. § 1367(a).

**B.   Default**

The first step in obtaining a default judgment is the entry of default.   "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default."   Fed. R. Civ. P. 55(a). The Clerk entered default on December 4, 2018.

C.   **Default Judgment**

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  However, a party seeking default judgment "is not entitled to a default judgment as of a right." Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).  The decision to enter a default judgment is "left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

Although every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted, Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before entering a default judgment the Court must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law," Chanel, 558 F. Supp. 2d at 535 (citing Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).  "Three factors control whether a default judgment should

be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).  If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment.

## D.  Analysis

### 1.  *Whether Plaintiff has stated a valid cause of action*

Plaintiff has asserted four counts against Defendants for violations of the ADA, ADEA, FMLA, and NJLAD.  Each will be addressed in turn, except for Plaintiff's NJLAD claims, which are addressed in tandem with her ADA and ADEA claims because they apply the same analysis as her related NJLAD claims.[4]

#### a.  ADA

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., provides that "[n]o covered entity shall discriminate

---

[4]  Guarneri v. Buckeye Pipe Line Services Co., 205 F. Supp. 3d 606, 615 (D.N.J. 2016) (citing Joseph v. New Jersey Transit Rail Operations Inc., 586 F. App'x 890, 892 (3d Cir. 2014) (citing Victor v. State, 203 N.J. 383, 4 A.3d 126, 145 (2010)) (other citations omitted) (explaining that disability discrimination claims under the ADA and the NJLAD are analyzed under the same framework); Monaco v. American General Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004) (explaining that the elements of a prima facie case under the ADEA and the NJLAD are the same).

against a qualified individual on the basis of disability in regard to  . . . [the] discharge of employees . . .  and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To state a prima facie cause of action for disability discrimination, the employee must show the following: (1) the employee was disabled; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Id.  Disability discrimination encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.  Taylor v. Phoenixville School Dist., 184 F.3d 296, 305–06 (3d Cir. 1999).

Under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), after the plaintiff establishes a prima facie case of discrimination, an inference of unlawful discrimination is created.  Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643–45 (3d Cir. 2015).  Once the plaintiff has successfully established a prima facie case creating an inference of discrimination, the burden shifts to the employer who must articulate a legitimate nondiscriminatory reason for the adverse employment action.  Id. (citations omitted).  This second step of McDonnell Douglas does not

12

require that the employer prove that the articulated legitimate,
nondiscriminatory reason was the actual reason for the adverse
employment action, but instead the employer must provide
evidence that will allow the factfinder to determine that the
decision was made for nondiscriminatory reasons.  Id. (citations
omitted).

If the employer satisfies this second step, the burden
shifts back once more to the plaintiff to show, by a
preponderance of the evidence, that the employer's proffered
legitimate, nondiscriminatory reason was pretextual – that not
only was the employer's proffered reason false, but the real
reason was impermissible discrimination.  Id.  This can be done
in two ways: (1) by pointing to evidence that would allow a
factfinder to disbelieve the employer's reason for the adverse
employment action by showing such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons, or (2) by pointing to
evidence that would allow a factfinder to believe that an
invidious discriminatory reason was more likely than not a
motivating or determinative cause of the employer's action,
which can be shown by (1) the defendant having previously
discriminated against the plaintiff; (2) the defendant having
discriminated against others within the plaintiff's protected
class; or (3) the defendant has treated similarly situated

13

individuals more favorably.  Id. (citations and quotations omitted).

In contrast to circumstantial evidence, direct evidence of discrimination is so revealing of discriminatory animus that it is unnecessary to rely on the McDonnell Douglas burden-shifting framework.  Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 269 (3d Cir. 2010).  Once a plaintiff produces such evidence, the defendant has the burden of producing evidence to show that it would have made the same decision in the absence of discriminatory animus.  Id. (citation omitted).  To qualify as direct evidence, the evidence must be such that it demonstrates that the decision-makers placed substantial negative reliance on an illegitimate criterion in reaching their decision.  Id. Direct evidence must satisfy two requirements: (1) the evidence must be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the defendant's decision; and (2) the evidence must be connected to the decision being challenged by the plaintiff. Id. (citations omitted).  Moreover, any statements made by a defendant's employees must be made at a time proximate to the challenged decision and by a person closely linked to that decision.  Id. (citation omitted).  These requirements are a high hurdle for plaintiffs.  Id. (citation omitted).

Accepting Plaintiff's alleged facts as true, Plaintiff has established a prima facie case of disability discrimination under the ADA.

(1) During Plaintiff's employment, she was disabled with the impairments of arthritis primarily impacting her knees and back, spinal stenosis, ankle complications (requiring surgery, screws and a plate), cataracts surgery, other miscellaneous health needs or complications, and she walked with a noticeable limp during the last year of her employment.

(2) Plaintiff states that she otherwise qualified to perform the essential functions of the job. See 42 U.S.C. § 12111 ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."); cf. Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)("One of the essential functions of a mail carrier is to physically deliver the mail to the people along the route.  In his deposition, Shiring concedes that this was impossible for him to do.  No amount of accommodation on the part of the Postal Service would have made this possible.  Thus, Shiring was not otherwise qualified for the position of PTF letter carrier.").

(3) Plaintiff was terminated relative to her disabilities. At the July 6, 2018 meeting with her managers, they stated, "You

have a lot of health issues," "You appear to have continuing knee and back problems anyway," and "This job is too hard for you with your legs."  In the July 8, 2018 text message, her manager stated, "You will not need to show up for work tomorrow we have terminated your employment for medical reasons.  You need to file for full unemployment, there will be no more discussion."  Plaintiff also claims that prior to her termination, she was regularly harassed due to her disabilities.

Because Plaintiff has established a prima facie case of discrimination under the ADA, the burden shifts to Defendants to articulate a legitimate business reason for Plaintiff's termination.  Defendants have failed to appear in the action and no legitimate business reason for Plaintiff's termination has been proffered.  Plaintiff has therefore stated a viable ADA discrimination claim.[5]

     **b.   ADEA**

The Age Discrimination in Employment Act ("ADEA") prohibits terminating a person's employment due to their age.  29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination, Plaintiff must demonstrate: (1) that she is at least 40 years old; (2) that she suffered an adverse employment action; (3) that she was qualified for the position she was

---

[5] This finding also establishes Plaintiff's disability discrimination claim under the NJLAD.  See, *supra*, note 4.

terminated from; and (4) either (a) that she was "replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive" or (b) "facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)).

Once the plaintiff satisfies a prima facie case, the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), supra, applies. Ultimately, to succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009).

Accepting Plaintiff's alleged facts as true, Plaintiff has established a prima facie case of age discrimination under the ADEA.

(1) Plaintiff was 70 years old at the time of her termination.

(2) Plaintiff was terminated.

(3) As determined above with regard to Plaintiff's ADA violation claim, Plaintiff was qualified for her position. See Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 69

(3d Cir. 1996) (explaining that the prima facie case for an ADEA claim - including whether someone is "otherwise qualified" for the position - is similar to the prima facie case for an ADA claim).

(4) Plaintiff's managers specifically referenced her age in the meeting on July 6, 2018. They stated, "You need to retire," "It is your time to retire," "Use your retirement to go to the beach," and "I'm 24, and I can't even keep up with the kids," implying that Plaintiff was unable to do her job due to her age. Additionally, Plaintiff frequently observed that the newly hired employees, many of whom were teenagers with no prior daycare experience, were given more hours than Plaintiff within the last year of her employment.

Because Plaintiff has established a prima facie case of discrimination under the ADEA, the burden shifts to Defendants to articulate a legitimate business reason for Plaintiff's termination. Defendants have failed to appear in the action and no legitimate business reason for Plaintiff's termination has been proffered. Plaintiff has therefore stated a viable ADEA discrimination claim. Plaintiff has therefore stated a viable ADA discrimination claim.[6]

    **c. FMLA**

---

[6] This finding also establishes Plaintiff's age discrimination claim under the NJLAD. See, *supra*, note 4.

The FMLA prohibits employers from discriminating against employees who have taken FMLA leave, and also prohibits employers from using an employee's utilization of FMLA leave as a negative factor in employment actions, such as hiring, promotion, or disciplinary actions.  29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).  Following FMLA leave, an employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions.  See id. § 2614(a)(1).

The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA.  29 U.S.C. § 2615(a)(1).  Such a claim is typically referred to as an "interference" claim.  Sommer v. The Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006).  To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them."  Sommer, 461 F.3d at 399 (citation omitted).  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  Id. (citation omitted).

An FMLA retaliation claim presents a different analysis.  The FMLA regulations provide:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c).

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave.  Lepore v. Lanvision Systems, Inc., 113 F. App'x 449, 452, 2004 WL 2360994, *2 (3d Cir. 2004) (citing Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004)).  Temporal proximity that is "unduly suggestive" satisfies the causation element of a plaintiff's prima facie case at the summary judgment stage. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000)); see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) ("Even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.")). Using time to satisfy the causation element of the *prima facie*

case, however, requires consideration "with a careful eye to the
specific facts and circumstances encountered." Farrell, 206
F.3d at 279 (citing Kachmar v. SunGard Data Sys., 109 F.3d 173,
178 (3d Cir. 1997)).  "There is clearly a difference between two
days and nineteen months." Id. (citations omitted); see also
Williams v. Philadelphia Housing Authority Police Dept., 380
F.3d 751, 760 (3d Cir. 2004) (holding that two months was not
"unduly suggestive"); Thomas, 351 F.3d at 114 (holding that
three weeks was not "unduly suggestive").  If the timing of the
events is not "unduly suggestive," the plaintiff can still show
a causal link with other circumstantial evidence, such as
evidence of ongoing antagonism or inconsistent reasons for
terminating the employee.  Id. at 280-81 (citing cases).

Once a plaintiff makes out a prima facie case, the usual
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden
shifting framework is implicated.  Id. (citing Weston v.
Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001)).

Plaintiff asserts both an interference claim and a
retaliation claim.  Accepting Plaintiff's factual allegations as
admitted, Plaintiff has stated a prima facie case for both FMLA
violation claims.

For her FMLA interference claim, Plaintiff claims that
Defendants are a qualifying employer under the FMLA, she was
entitled to FMLA leave and had utilized FMLA leave, but

Defendants: failed to provide Plaintiff with required written eligibility notifications of her FMLA rights within 5 days from being her taking medical leave, see 29 CFR § 825.300(b)(1); failed to provide Plaintiff with written FMLA designation notices within 5 days from her being on medical leave, see id. § 825.300(b)(2); failed to provide Plaintiff with required written rights and responsibilities notices within 5 days from her being on medical leave, see id. § 825.300(c)(1)(i)-(vii); and failed to provide written FMLA designation notices for a leave, see id. § 825.300(d)(1)-(6).  Defendants also interfered with Plaintiff's right and entitlement to reinstatement to the same or similar position when it converted her to a part-time employee immediately following the leave Plaintiff took for back surgery.

For her FMLA retaliation claim, Plaintiff took FMLA leave, she was terminated, and her termination was caused by her use of FMLA leave.  Specifically, when Plaintiff returned from back surgery, she was immediately converted to a part-time employee, while other employees who did not use FMLA leave received more hours.  Defendants also harassed Plaintiff and gave her a hard time for needing to take time off for medical appointments during the year leading up to her termination, and at times Plaintiff did not go to appointments because of this dissuasion.

Defendants also terminated Plaintiff directly because of her medical issues and need to take FMLA leave.

At this point, it is Defendants' obligation to articulate a legitimate business decision for their actions, but their failure to appear in the case results in no such reason being proffered.  Plaintiff has stated viable claims for FMLA interference and retaliation.

### 2.   *Whether Plaintiff is entitled to a default judgment*

Because it has been determined that Plaintiff has stated viable causes of action for violations of the ADA, ADEA, FMLA and NJLAD, it must be determined whether Plaintiff is entitled to a default judgment.  As stated above, prior to entering judgment on the counts where a valid cause of action has been established, three factors must be considered: (1) prejudice to the plaintiff if default judgment is not granted; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's delay was the result of culpable misconduct.  Chamberlain, 210 F.3d at 164.

### a.   **Prejudice to plaintiff**

Plaintiff will be prejudiced absent a default judgment because Defendants' failure to respond to Plaintiff's claims leaves Plaintiff with no other means to vindicate her claims.

### b.   **Existence of meritorious defense**

23

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 869-70 (3d Cir. 1984); accord $55,518.05 in U.S. Currency, 728 F.2d at 195; Feliciano, 691 F.2d at 657; Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982). Here, it is axiomatic that the Court cannot consider Defendants' defenses because Defendants have failed to respond to this action. See Prudential Ins. Co. of America v. Taylor, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. 2009) ("[B]ecause Ms. Ducker has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses."); Santiago v. Lucky Lodi Buffet Inc., 2016 WL 6138248, at *3 (D.N.J. 2016) (in an motion for default judgment, finding that "in the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense").

### c.   Whether Defendants' delay is the result of culpable conduct

Defendants' delay appears to be the result of culpable conduct. "Culpable conduct is dilatory behavior that is willful or in bad faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123 (3d Cir. 1983). Plaintiff served Defendants with

24

her complaint on November 6, 2018, they failed to respond, and
they have never appeared since.  Plaintiff's counsel's affidavit
in support of default represents that Defendants are not minors,
they are not incompetent, and they have not been engaged in
military service.  Therefore, Defendants' failure to appear in
the action can be deemed willful.  See, e.g., Santiago, 2016 WL
6138248, at *3 (finding that "Defendants acted culpably as they
have been served with the Complaint and Defendants are not
infants, otherwise incompetent, or presently engaged in military
service").

Consequently, because the Court has found that Plaintiff
will be prejudiced if default judgment is not granted,
Defendants do not have a meritorious defense, and Defendants'
failure to appear in this case is the result of their culpable
misconduct, judgment shall be entered in Plaintiff's favor on
her ADA, ADEA, FMLA, and NJLAD claims.

### 3.   Damages

In order to determine what damages Plaintiff is entitled to
for her judgment against Defendants, the Court may "conduct
hearings or make referrals - preserving any federal statutory
right to a jury trial - when, to enter or effectuate judgment,
it needs to . . . determine the amount of damages."  Fed. R.
Civ. P. 55(b)(2); cf. Fed. R. Civ. P. 55(b)(1) ("If the
plaintiff's claim is for a sum certain or a sum that can be made

25

certain by computation, the clerk - on the plaintiff's request,
with an affidavit showing the amount due - must enter judgment
for that amount and costs against a defendant who has been
defaulted for not appearing and who is neither a minor nor an
incompetent person."); Jonestown Bank and Trust Co. v. Automated
Teller Mach., Services, Inc., 2012 WL 6043624, *4 (M.D. Pa.
2012) (citing 10 James Wm. Moore, et al., Moore's Federal
Practice § 55.32[2][c] (Matthew Bender ed. 2010) ("[T]he
'hearing' may be one in which the court asks the parties to
submit affidavits and other materials from which the court can
decide the issue.")).

### a.   Back pay and front pay

Plaintiff seeks an award of back pay and front pay for her
all of her claims.  Plaintiff contends she is entitled to back
pay damages stemming from her July 8, 2018 termination, as well
as her illegal conversion to a part-time employee following her
medical leave.  Such damages are available under the ADEA, ADA,
FMLA and NJLAD.  See Eshelman v. Agere Systems, Inc., 554 F.3d
426, 440 n.7 (3d Cir. 2009) ("The ADA incorporates the remedies
provided for in Title VII of the Civil Rights Act of 1964,"
which include front and back pay); Blum v. Witco Chemical Corp.,
829 F.2d 367, 373-74 (3d Cir. 1987) (citations omitted) ("Back
pay coupled with reinstatement is the preferred remedy to avoid
future damages in ADEA cases.  The relevant time period for

26

calculating an award of back pay begins with wrongful
termination and ends at the time of trial. . . . In calculating
a front pay award, the jury must consider the expected future
damages caused by defendant's wrongful conduct from the date of
judgment to retirement.  A plaintiff, of course, has a duty to
mitigate damages, and his new salary will be deducted from the
old to avoid a windfall award."); Churchill v. Star Enterprises,
183 F.3d 184, 193 (3d Cir. 1999) (citing 42 U.S.C. §§ 2000e et
seq.) (FMLA provides for back pay and front pay or
reinstatement); Andujar v. General Nutrition Corporation, 2018
WL 1087494, at *10 (D.N.J. 2018) (citing Goodman v. London
Metals Exchange, 86 N.J. 19, 34, 429 A.2d 341 (1981)) (other
citations omitted) (explaining that back pay and front pay are
recoverable under the NJLAD).

Plaintiff is entitled to back pay and front pay for
Defendants' violations of the ADA, ADEA, FMLA and NJLAD.[7]

> **b.   Compensatory, punitive and liquidated**
> **damages**

Plaintiff also seeks damages for pain, suffering,
inconvenience, mental anguish, and loss of enjoyment of life

---

[7] Plaintiff is entitled to a single recovery for her front pay
and back pay, despite Defendants' violation of four statutes.
As discussed below, Plaintiff is required to provide
supplemental briefing to support her request for other damages,
which should include an explanation as to how those damages are
calculated when several statutes have been violated.

that she experienced as a consequence of Defendants terminating her employment due to her age and disability.  Plaintiff also seeks punitive damages and liquidated damages because she was directly told that she was terminated due to her age and disability or perceived disability.  Plaintiff concedes that traditional compensatory damages and punitive damages are not available under the ADEA and FMLA, but they are available under the ADA and NJLAD.  See Blunt v. Lower Merion School Dist., 767 F.3d 247, 272 (3d Cir. 2014) (citations omitted) (explaining that compensatory damages under the ADA are available where there is a showing of intentional discrimination based on a deliberate indifference standard); Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 573 (3d Cir. 2002) (citing 42 U.S.C. § 1981a(b)(1)) ("Punitive damages are available under the ADA when 'the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference.'"); Andujar, 2018 WL 1087494 at *10 (citing Goodman v. London Metals Exchange, 86 N.J. 19, 34, 429 A.2d 341 (1981)) (other citations omitted) (emotional distress damages are recoverable under the NJLAD); Stowell v. Black Horse Pike Regional School District, 2019 WL 6044937, at *10 (D.N.J. 2019) (citations omitted) ("The NJLAD permits recovery of punitive damages in cases where two elements are met: 'the offending conduct must be especially egregious; and there must

28

be actual participation in or willful indifference to the wrongful conduct on the part of upper management.'").

With regard to liquidated damages, such damages are available under the ADEA and FMLA.  An award of liquidated damages under the FMLA is compensatory in nature, while liquidated damages under the ADEA are considered punitive.  Akin to compensatory damages under the ADA, in order to be entitled to liquidated damages under the FMLA, the defendant's violation must not have been done in good faith.  Similar to punitive damages under the ADA and NJLAD, in order to be entitled to liquidated damages under the ADEA, a defendant's violation must be willful.  See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1102 (3d Cir. 1995) (under the ADEA, permitting pre-judgment interest, which are compensatory damages, and liquidated damages, which are punitive in nature, but in order to recover punitive damages, the defendant's conduct in violating the ADEA must be willful); Punter v. Jasmin Intern. Corp., 2014 WL 4854446, at *6 (D.N.J. 2014) (citing Starceski, 54 F.3d At 1102) (explaining that under the FMLA, prejudgment interest is not available to parties who are awarded liquidated damages for unpaid wages under the FLSA because "both serve the same purpose, namely to compensate employees for losses caused by delayed receipt of wages they are due"); Velcko v. Saker Shoprites, Inc., 2016 WL 4728106, at *8 (D.N.J. 2016) (citing 29

U.S.C. 2617(a)(1)(A)(iii)) (explaining that the FMLA allows for liquidated damages for violations equal to wages, salary, employment benefits or other compensation denied or lost to such employee because of the violation, but the FMLA provides that these damages will not be awarded if the violation was in good faith and that the employer had objectively reasonable grounds to believe that the act or omission did not violate the FMLA).

Accepting as true that Defendants specifically terminated Plaintiff because of her age and her disability or perceived disability, Plaintiff is entitled to back pay and front pay. Further accepting as true that Defendants' actions were intentional and not performed in good faith, Plaintiff has also met the standard for an award of compensatory damages for Defendants' violation of the ADA and NJLAD, and for liquidated damages under the FLSA. Plaintiff should provide to the Court a supplemental certification, with evidentiary support and citation to the relevant statutory provisions and caselaw, to establish the back pay, front pay, and liquidated damages she is entitled to.

With regard to punitive damages under the ADA and NJLAD, and liquidated damages under the ADEA, the Court cannot determine, based on Plaintiff's current motion, whether such damages should be awarded on the facts presented here. Plaintiff should provide a supplemental brief with citation to

the relevant statutory provisions and caselaw to support her
claim for damages which are punitive in nature.  See, e.g., D.B.
v. Bloom, 896 F. Supp. 166, 171 (D.N.J. 1995) (where a plaintiff
who had been denied dental services because of his HIV status
sought default judgment against the dentist for ADA and NJLAD
violation claims, awarding compensatory and punitive damages,
and citing several comparable cases for support) (citing Smith
v. Wade, 461 U.S. 30, 54 (1983) ("Punitive damages are awarded
in the jury's discretion 'to punish [the defendant] for his
outrageous conduct and to deter him and others like him from
similar conduct in the future.' Restatement (Second) of Torts §
908(1) (1977).  The focus is on the character of the
tortfeasor's conduct - whether it is of the sort that calls for
deterrence and punishment over and above that provided by
compensatory awards.  If it is of such a character, then it is
appropriate to allow a jury to assess punitive damages . . .
.").

### c.  Attorney's fees

Under the ADA, ADEA, FMLA, and NJLAD, Plaintiff is entitled
to reasonable attorney's fees and costs.  See Diaz v. Saucon
Valley Manor Inc., 579 F. App'x 104, 110 (3d Cir. 2014)
("Under the FMLA and the ADA, a prevailing party is entitled to
reasonable attorneys' fees and costs.") (citing 29 U.S.C. §
2617(a)(3) ("The court in such an action shall, in addition to

any judgment awarded to the plaintiff, allow a reasonable
attorney's fee, reasonable expert witness fees, and other costs
of the action to be paid by the defendant."); 42 U.S.C. § 12205
("In any action . . . the court or agency, in its discretion,
may allow the prevailing party . . . a reasonable attorney's
fee, including litigation expenses, and costs . . . ."); 
Spinetti v. Service Corp. Intern., 324 F.3d 212, 216 (3d Cir.
2003) (citing 29 U.S.C. §§ 626(b), 216(b)) (explaining that the
ADEA permits an award of attorney's fees and costs to a
prevailing party); Abrams v. Lightolier Inc., 50 F.3d 1204, 1221
(3d Cir. 1995) (citing N.J.S.A. 10:5-27.1) ("Under the NJLAD,
reasonable attorneys' fees are available to a prevailing
plaintiff as part of costs.").

Plaintiff's counsel will be directed to provide the Court
with a certification of attorney's fees and costs, with citation
to the applicable statutory provisions and caselaw to support
Plaintiff's request for attorney's fees and costs.

### CONCLUSION

After deeming admitted every well-pled allegation in
Plaintiff's complaint, Plaintiff has established her prima facie
cases against Defendants for their violation of the ADA, ADEA,
FMLA, and NJLAD.  Judgment as to liability against Defendants in
Plaintiff's favor on all counts in her complaint will be
entered.  With regard to damages, Plaintiff has also established

32

her entitlement to damages in the form of back pay, front pay, compensatory damages. She has also established that she is entitled to attorney's fees and costs. As set forth above, Plaintiff will be granted leave to provide supplemental submissions to quantify the amount of damages and counsel's fees and costs.

With regard to Plaintiff's request for punitive damages, Plaintiff has not met her burden to establish the imposition of those type of damages based on her current motion. In addition to her submission with regard to her other damages, Plaintiff may provide additional briefing to support her request for punitive damages.

An appropriate Order will be entered. A final judgment will be entered after the Court considers Plaintiff's supplemental submissions.

Date: _April 21, 2020_          ___ s/ Noel L. Hillman_____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

33