**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LYDIA DEJESUS,

Plaintiff,

v.

KIDS ACADEMY, INC., doing business as KIDACADEMY LEARNING CENTER, and GOLDBIL INVESTMENT CORP., doing business as KIDACADEMY LEARNING CENTER,

Defendants.

1:18-cv-13822-NLH-AMD

**OPINION**

**APPEARANCES:**

JULIA W. CLARK
ARI R. KARPF
KARPF KARPF & CERUTTI PC
3331 STREET ROAD
TWO GREENWOOD SQUARE
SUITE 128
BENSALEM, PA 19020

*On behalf of Plaintiff*

SAMANTHA SHERWOOD BONONNO
FISHER & PHILLIPS
TWO LOGAN SQUARE, 12TH FLOOR
100 N. 18TH STREET
PHILADELPHIA, PA 19103

WILLIAM WHITMAN (admitted *pro hac vice*)
WHITMAN, LLC
1001 OLD CASSATT RD., STE. 104,
BERWYN, PA 19312

*On behalf of Defendants*

**HILLMAN, District Judge**

Plaintiff, Lydia DeJesus, filed a complaint on September 12, 2018 against her former employer, Defendants, Kids Academy, Inc. and Goldbil Investment Corp., for their alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq.[1] Defendants were served with Plaintiff's complaint and failed to respond. On December 3, 2018, Plaintiff requested that the Clerk enter default against Defendants. The Clerk entered default on December 4, 2018.

On April 21, 2020, the Court granted Plaintiff's motion for default judgment on all her claims. (Docket No. 9.) The Court entered judgment in Plaintiff's favor and against Defendants as to Defendants' liability, and determined that Plaintiff was entitled to back pay, front pay, damages, and attorney's fees and costs. (Docket No. 10.) The Court reserved decision on whether Plaintiff was entitled to punitive damages pending a supplemental submission

[1] This Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey state law claim pursuant to 28 U.S.C. § 1367(a).

by Plaintiff to quantify an award of damages and attorney's fees. On May 19, 2020, Plaintiff submitted her supplemental materials.[2] (Docket No. 13.)

On August 20, 2020, Defendants filed a motion to vacate default and default judgment. On December 16, 2020, the Court granted Defendants' motion to vacate the Court's entry of default judgment. (Docket No. 28, 29.) The Court imposed sanctions on Defendants, however, in the amount of attorney's fees and costs associated with Plaintiff's efforts to secure a default judgment against Defendants and oppose their motion to vacate because the Court found that Defendants made a willful decision to ignore Plaintiff's suit against them.

Currently before the Court is Defendants' motion to dismiss Plaintiff's complaint. Defendants argue that Plaintiff's ADEA and ADA claims must be dismissed because she failed to exhaust her administrative remedies prior to filing suit. Specifically with regard to Plaintiff's ADA claims, Defendant points out that a plaintiff must file a charge of discrimination with the EEOC

[2] Plaintiff's proposed judgment sought $8,310 in attorney's fees, $603.01 in costs, $56,179.93 in lost wages, $56,179.93 in liquidated damages under the FMLA, $56,179.93 in liquidated damages under the ADEA, with back pay, front pay, and punitive damages to be determined. The total judgment facing Defendants was $177,452.80, in addition to being liable to Plaintiff for back pay, front pay, and possibly punitive damages.

within 300 days[3] after the alleged wrongful act occurred and receive a right-to-sue letter in order to properly exhaust her administrative remedies.[4] Defendants further point out that Plaintiff did not receive the requisite "right-to-sue" letter from the EEOC until February 25, 2019, which was approximately 166 days after Plaintiff filed her complaint, and Defendants contend that a plaintiff cannot file suit until after the letter is issued. Defendants further argue that Plaintiffs' FMLA interference claim is not sufficiently pleaded and must be dismissed. For Plaintiffs' state law NJLAD claims, Defendants argue that the Court should decline to continue exercising supplemental

---

[3] Ordinarily, an ADA plaintiff must file an administrative charge with the EEOC within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1). If, however, the plaintiff first institutes proceedings with a "State or local agency with authority to grant or seek relief from such practice," that 180-day limitations period is extended to 300 days. Id.; see also Cortes v. University of Medicine and Dentistry of New Jersey, 391 F. Supp. 2d 298, 310 (D.N.J. 2005) ("New Jersey [] is a 'deferral state' and, as such, the relevant time period is not 180 days, but 300. Pursuant to 42 U.S.C. § 2000e-5(c), the EEOC must refer complaints arising in New Jersey to the New Jersey Division on Civil Rights. Due to the existence of this deferral agency, a plaintiff's complaint is thus timely filed if received by the EEOC within 300 days from the date of the alleged violation.").

[4] As discussed below, the main purpose of the administrative process is to give prompt notice to the employer and encourage the prompt processing of all charges of employment discrimination in an effort to avoid formal litigation. Simko v. United States Steel Corp., 992 F.3d 198, 206-07 (3d Cir. 2021). As further discussed below, it appears that Defendants did not participate in that process, just as they had ignored Plaintiff's instant suit.

jurisdiction over those claims once the federal claims have been dismissed.

Plaintiff counters Defendants' argument that she did not fully exhaust her administrative remedies. Plaintiff relates that she was terminated on July 8, 2018, she filed her Charge of Discrimination with EEOC on July 12, 2018, and she filed her lawsuit on September 12, 2018. For her ADEA claim, which only requires a plaintiff to wait 60 days prior to bringing suit after an alleged violation of the ADEA and does not require the issuance of a right-to-sue letter, Plaintiff's complaint was filed 62 days after her termination in compliance with the administrative procedures.

For Plaintiff's ADA claim, Plaintiff agrees that she did not receive her right-to-sue letter until February 25, 2019, but she argues that so long as the EEOC investigation has been completed and she has received her right-to-sue letter prior to the substantive resolution of her claims, she has satisfied the exhaustion requirement, which is not jurisdictional in the sense that not having the right-to-sue letter would deprive this Court of subject matter jurisdiction over her ADA claim.

With regard to her FMLA claims, Plaintiff argues that her FMLA interference claim is properly pleaded, and she points out that she has also asserted an FMLA retaliation claim, which

Defendants have not moved to dismiss. With the viability of Plaintiff's federal claims, Plaintiff argues that this Court's continued supplemental jurisdiction over her NJLAD claims is proper.

The Court finds that Plaintiff's complaint may proceed in its entirety, but the Court also notes that there is a pox on both parties' houses. With regard to Plaintiff's FMLA claims, in resolving Plaintiff's motion for default judgment the Court found that Plaintiff sufficiently pleaded FMLA interference and retaliation claims such that she was entitled to default judgment based only on the allegations in her complaint. (Docket No. 9 at 18-23.) Even though the Court vacated that decision to permit Plaintiff's claims to proceed on their merits, nothing has changed to alter the Court's analysis of the pleading sufficiency of those claims.[5] For the sake of efficiency and to avoid redundancy, the Court incorporates that analysis into this Opinion and finds that Plaintiff's FMLA interference and relation claims are sufficiently pleaded and may proceed.

[5] See the Court's Opinion granting Defendants' motion to vacate default judgment, Docket No. 28 at 7, explaining, "In analyzing Plaintiff's motion for default judgment, the Court detailed the applicable standards for pleading and proving each of Plaintiff's claims. (Docket No. 9 at 11-23.) The Court found that the allegations in Plaintiff's complaint, when accepted as true and undisputed by Defendants, met all the elements to support Defendants' liability for those claims. (Id.)"

For Plaintiff's ADEA claim, Plaintiff properly complied with the administrative process timeline. See Covington v. URS Corp., 2013 WL 2181282, at *2 (D.N.J. 2013) (citing 29 U.S.C. § 626(d)(1)(2); Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 62–63 (3d Cir. 1985)) (explaining that under the ADEA, a complainant must file a Charge of Discrimination with the EEOC within 180 days after the alleged unlawful act of discrimination, and after filing a charge with the EEOC, the complainant must wait at least 60 days before commencing a federal suit under the ADEA, which does not require that the EEOC issue a right-to-sue letter before a complainant can commence a federal suit). Plaintiff's ADEA claim may proceed.

Plaintiff's ADA claim, given the timing of the filing of Plaintiff's complaint and the issuance of the right-to-sue letter, presents a somewhat more complicated situation. Typically, the administrative process for an ADA violation claim consists of: (1) the filing of a claim with the EEOC within 300 days of the unlawful employment practice; (2) if the EEOC finds no reason to take action on the charge, it will issue a right-to-sue letter; and (3) after the issuance of the right-to-sue letter, a suit must be filed within 90 days of the date on which the complainant received the letter. Phillips v. Sheraton Society Hill, 163 F. App'x 93, 94 (3d Cir. 2005) (citing 42 U.S.C. § 12117(a))

(adopting Title VII enforcement scheme and remedies for the ADA).

Here, Plaintiff filed her complaint on July 8, 2018, she filed her Charge of Discrimination with EEOC on July 12, 2018, she filed her lawsuit on September 12, 2018, and she received her right-to-sue letter on February 25, 2019. Even though Plaintiff's September 12, 2018 complaint was properly filed for her ADEA, FMLA, and NJLAD claims, under a strict interpretation of the administrative exhaustion timeline, Plaintiff should have waited to bring her ADA claims, which arise from the same facts as her other claims, until February 25, 2019.[6]

Defendants argue that Plaintiff's ADA claims must be dismissed because she did not wait. The Court disagrees under the circumstances of this case. First, Defendants did not appear in this action until August 20, 2020 when they filed their motion to vacate default judgment. The Court vacated default on December 20, 2020, and the case was reset as if it were the first day it was filed. At that point, the EEOC administrative process had concluded over a year and ten months earlier. The purpose of the

[6] Procedurally, at the time she filed her complaint and so that she did not have to wait the approximately 10 months for the administrative process to conclude to file suit on her other claims, Plaintiff could have omitted her ADA claim from her complaint, and once she received her right-to-sue letter, she could have moved to add that claim to her complaint. As noted, however, Defendants' belated appearance in the action effectively fulfilled that procedure.

administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it "the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Webb v. City of Philadelphia, 562 F.3d 256, 262-63 (3d Cir. 2009) (citations omitted).[7] By the time Defendants appeared in the case and the Court vacated default judgment, that process had concluded. The purpose of the process was only half-way fulfilled, however, through no fault of Plaintiff, as Defendants themselves thwarted that process by apparently failing to participate in it, as discussed in more detail below.

Second, the filing of a timely charge of discrimination with

[7] The Third Circuit has more recently elaborated:

> [T]he ADA requires that a plaintiff administratively exhaust all claims before seeking relief in federal court. These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action. The Supreme Court has also emphasized that a fundamental aim of the pre-suit requirements is to give prompt notice to the employer and encourage the prompt processing of all charges of employment discrimination. The exhaustion requirement thus advances the remedial purposes of the ADA.

Simko v. United States Steel Corp, 992 F.3d 198, 206-07 (3d Cir. 2021) (internal citations and quotations omitted). Where an employer fails to respond to a charge and engage in the conciliation process, like Defendants here, an employee has no other recourse but to file suit.

the EEOC is "not a jurisdictional prerequisite to filing [an ADA] suit, but a requirement subject to waiver as well as tolling when equity so requires." Gooding v. Warner-Lambert Co., 744 F.2d 354, 358-59 (3d Cir. 1984) (quoting Zipes v. Trans World Airways, Inc., 455 U.S. 385, 393 (1982)); see also Fort Bend County, Texas v. Davis, 139 S. Ct. 1843, 1851-52 (U.S. 2019) ("[A] rule may be mandatory without being jurisdictional, and Title VII's [and the ADA's] charge-filing requirement fits that bill."). "[T]he same is true of the issuance of a right-to-sue letter; such a letter is not a 'jurisdictional' requirement in the constitutional sense, but rather a statutory requirement designed to give the administrative process an opportunity to proceed before a lawsuit is filed." Gooding, 744 F.2d at 359; see also Phillips, 163 F. App'x at 94 (quoting Hornsby v. United States Postal Service, 787 F.2d 87, 89 (3d Cir. 1986) (other citation omitted) (explaining that a failure to exhaust administrative remedies is a defense "in the nature of statutes of limitation and does not affect the District Court's subject matter jurisdiction"); Orange v. Camden County Dept. of Health and Human Services, 2021 WL 3561216, at *3 (D.N.J. 2021) (citing Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 2d 650, 654-655 (E.D. Pa. 2002) (citing Gooding, 744 F.2d at 358) (explaining that the failure to obtain notice of the right to sue is a curable defect). Again, that process had completed well

before Defendants appeared in this action.

Third, in the majority of cases, the dismissal of claims for a plaintiff's failure to exhaust administrative remedies occurs where the administrative process has not yet been completed, or where the plaintiff has never availed herself of the administrative process at all. See, e.g., Hickman v. Amazon Fulfillment, 662 F. App'x 176, 178–79 (3d Cir. 2016) ("Put simply, prior to bringing claims for discrimination under the various acts, Hickman was required to file a claim with the EEOC and/or PHRC; there is not a single averment demonstrating that he did so (even now, on appeal). Accordingly, the Amended Complaint was properly dismissed."); Domino v. County of Essex, 2021 WL 508617, at *3 (D.N.J. 2021) (dismissing the plaintiff's Title VII claim because even though the plaintiff alleged that he filed a charge with the EEOC in 2015, the plaintiff did not attach a right-to-sue letter to the complaint, there were no factual allegations from which to reasonably infer that he obtained a right-to-sue notice, and the plaintiff did not appear to dispute defendant's motion that he failed to exhaust his administrative remedies).

Finally, where the receipt of a right-to-sue letter is not alleged in the complaint, and the right-to-sue letter is issued after the complaint is filed, the complaint cannot be dismissed for lack of subject matter jurisdiction, as the letter requirement

is not jurisdictional, and it also cannot be dismissed for violating Rule 8(a). Gooding, 744 F.2d at 358–59. In such an instance, the Third Circuit has instructed that a court should provide leave to the plaintiff under Rule 15(a) to amend her complaint because "it is a sound and established policy that procedural technicalities should not be used to prevent [ADA] claims from being decided on their merits." Id.

In its motion to dismiss, Defendants state that they never received a copy of Plaintiff's Charge of Discrimination from the EEOC, but they assumed she filed one after they were contacted by the EEOC in response to Plaintiff's Charge of Discrimination. It is unclear when Defendants were contacted by the EEOC, but Defendants represent that it was "sometime" after Plaintiff filed the instant suit on September 12, 2018.[8] Defendants relate that in connection with Defendants' motion to vacate default judgment, Plaintiff's counsel refused to confirm or deny to Defendants' counsel that the right-to-sue letter was issued prior to her filing this lawsuit, Plaintiff's counsel refused to provide Defendants' counsel with a copy of the letter,[9] and Plaintiff's

[8] "When a charge is filed against an organization, the EEOC will notify the organization within 10 days." https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed. The charge here was filed on July 12, 2018.

[9] "The notification [from the EEOC about a charge] will provide a URL for the Respondent to log into the EEOC's Respondent Portal to

counsel failed to address Defendants' failure-to-exhaust defense presented in their motion.

Defendants further contend that Plaintiff's counsel actively misled them and this Court by averring in the complaint that a right-to-sue letter had already been issued prior to the filing of the complaint, even though it had not. (Docket No. 1 at 7, "Plaintiff properly exhausted her administrative remedies to proceed under federal laws asserted *infra* by filing with the Equal Employment Opportunity Commission ('EEOC') timely and by filing the instant lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of case closure."). Because of all of this, Defendants argue that they have been "obviously prejudiced" by "a default judgment being entered prior to the issuance of the requisite Notice, particularly in light of the fact that default could not have been entered in the absence of the Notice, but for the misrepresentation in Plaintiff's Complaint on which the Clerk and Court relied." (Docket No. 33 at 6.)

Ultimately, this Court concludes that this mutual "pox" on both Plaintiff's counsel and defense counsel's houses does not impact the viability of Plaintiff's ADA claim going forward.

---

access the charge and receive messages about the charge investigation." https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed. Defendants had the ability to obtain a copy of Plaintiff's charge directly from the EEOC.

Plaintiff's counsel erred by stating in the complaint that Plaintiff had already received her right-to-sue letter. Perhaps it was a scrivener's error from counsel's reuse of a complaint in a different matter, although it is troubling to the Court that counsel does not provide a direct explanation for this. The Court, however, did not rely upon on this statement in its prior decision granting default judgment, and even if it had, that decision has been vacated. Despite all the activity in this case, the matter is still at the pleading stage, and a simple amendment may cure that error. See, e.g., Galluccio v. Pride Industries, Inc., 2016 WL 234840, at *2 (D.N.J. 2016) (in considering the defendant's motion to dismiss the plaintiffs' ADA claims because the plaintiffs had not yet been issued their right-to-sue letters, finding moot that argument because at the time of the court's decision, the plaintiffs had received their right-to-sue letters, and granting the plaintiffs leave to file an amended complaint to reflect the receipt of the letters). Plaintiff's counsel is admonished and reminded of their responsibility to file factually accurate pleadings on an issue of such importance.

Relatedly, although Defendants lament they have been prejudiced, the Court does not see how. As the Court observed in the decision vacating default judgment:

> Defendants admit that they were aware of Plaintiff's pending federal court action against them [as of September or

> October 2018], yet they took no action. Indeed, Golden [the Kids' Academy founder and owner] sent Plaintiff a text message on December 19, 2018, stating, "Call me Lydia . . . this is the only way you will receive anything financially. Lawyers will never get you a dime in your life time." (Docket No. 7 at 4; Docket No. 26 at 136.)
>
> Generally speaking, a properly served defendant who intentionally ignores that a complaint has been filed against him does not present a justifiable excuse for failing to respond. This principle is applicable to *pro se* defendants, so it is especially true where the defendant is a business, and the served party is the business's "founder and owner" who "hires child care and management professionals to assist him with the day-to-day operations and management of the day-care centers." . . .
>
> Defendants were properly served with Plaintiff's complaint, and instead of filing an answer or otherwise responding to Plaintiff's claims, Defendants sent Plaintiff, who was represented by counsel, a seemingly extortionist and threatening text message. When they received no response, Defendants assumed Plaintiff went away. She did not. Plaintiff diligently pursued the only course of action available to her to attempt to vindicate her employment discrimination and retaliation claims against her former employer.

(Docket No. 10-11, 15.)

Defendants admit they were contacted by the EEOC about Plaintiff's discrimination claims arising from her July 8, 2018 termination, and they admit they knew they were being sued by Plaintiff as of September or October 2018. But they did nothing in response. Indeed, if Defendants had timely responded to Plaintiff's complaint, they may have likely succeeded on a motion to dismiss Plaintiff's ADA claim for her failure to exhaust her administrative remedies at that point. <u>See</u> <u>Fort Bend County,</u>

Texas v. Davis, 139 S. Ct. 1843, 1851–52 (U.S. 2019) ("[R]ecognizing that the charge-filing requirement is nonjurisdictional gives plaintiffs scant incentive to skirt the instruction. Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them. A Title VII [and ADA] complainant would be foolhardy consciously to take the risk that the employer would forgo a potentially dispositive defense.").

Instead, Defendants chose not to respond, and the EEOC performed an investigation. As of February 25, 2019, Plaintiff received her right-to-sue letter, marking the conclusion of the administrative process. Plaintiff's counsel's refusal to provide defense counsel with information regarding the right-to-sue letter does not negate Defendants' knowledge of Plaintiff's lawsuit and EEOC charge, which were both lodged within days and weeks of Plaintiff's termination, and it does not erase the fact that the administrative remedies had been exhausted prior to any substantive evaluation of Plaintiff's ADA claim on its merits.

As set forth above, Plaintiff's administrative remedies were exhausted over a year before this Court entered default judgment, and over a year-and-a-half before Defendants finally appeared. Although the procedural history of this case would have been much cleaner and less laborious had the parties and counsel proceeded

in a more straightforward and candid fashion, Defendants have suffered no prejudice, and they will suffer no prejudice, by Plaintiff's ADA claim proceeding. The prejudice to Plaintiff caused by Defendants' failure to appear in the action for two years has already been recompensed.

Plaintiff shall be afforded 20 days to file an amended complaint to amend the averment related to the exhaustion of her administrative remedies.[10] Defendants' motion to dismiss will be denied, and all of Plaintiff's claims may proceed to discovery.

An appropriate Order will be entered.

Date: August 31, 2021
At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

---

[10] See Galluccio v. Pride Industries, Inc., 2016 WL 234840, at *2 (D.N.J. 2016), explaining:

> Amendments to pleadings "should [be] freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendments under Rule 15 should be liberally granted in order to ensure that claims will be decided on their merits rather than on technicalities. See Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). Thus, in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, amendments should be granted. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Amending the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss. Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988).